IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT L. WALTRIP, JR., *et al.*,

      Plaintiffs,

vs.                                                                                           No. CIV-03-1245 BB/WDS

ASSOCIATION OF MUTUAL PROTECTION AND
MUTUAL BENEFIT OF THE COMMUNITY OF
CERRO DE GUADALUPE, *et al.*,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion For, and Argument in Support of, Summary Judgment on Plaintiffs' Declaratory and Injunctive Relief Claims (Doc. No. 131, filed January 10, 2005). The Court has reviewed the submissions of the parties and the relevant law. For the reasons set forth below, the Court shall **GRANT IN PART** and **DENY IN PART** Plaintiffs' Motion.

**Plaintiffs' Entitlement to Divert Water from Cerro Ditch**

Plaintiffs seek declaratory relief stating they are "entitled to divert the Wanda A. McGee 1972 Trust's ("Trust") permitted water rights from the works of Defendant, the Association of Mutual Protection and Mutual Benefit of the Community of Cerro de Guadalupe ("Cerro Ditch"), pursuant to State Engineer Permit Nos. '86 and 0624-A' and '86 and 0624-B.'" (Mot. at 1). Plaintiffs argue that they acquired adjudicated water rights, a membership in Cerro Ditch, an ownership interest in Cerro Ditch and an easement to use Cerro Ditch. (Mot. at 14-15). Defendants contend that Plaintiffs lost their membership, ownership interest and easement in Cerro Ditch when Plaintiffs' transferred

their water rights from the Martinez tracts to Plaintiffs' ranch which is located upstream on Cerro Ditch.

In addition to water rights and an easement in the ditch, Plaintiffs must not be delinquent in their contribution of labor or payments for ditch maintenance in order to be entitled to divert water from Cerro Ditch. "No person who has, after due notice, failed or refused to do his work, or pay the amount assessed against him in lieu of the work upon the acequia or ditch, shall be allowed to take or use any water from the [acequia or ditch . . .], while default on the payment of failure to do work continues." N.M. STAT. ANN. § 73-2-25. Plaintiffs' Motion does not set forth any facts relating to whether or not Plaintiffs were delinquent in working on Cerro Ditch or paying their assessments. While Plaintiff Waltrip's affidavit indicates Plaintiffs performed some work, which is disputed by Defendants, it does not indicate that the amount of work was sufficient pursuant to N.M. STAT. ANN. § 73-2-25. (Waltrip Affidavit, ¶ 7, Doc. No. 163, filed February 7, 2005; Reply to Affidavit of Robert L. Waltrip, Jr., Doc. No. 185, filed February 22, 2005, at 5 and attached Second Supplemental Affidavit of Gilbert Segura, ¶ 8). Therefore, the Court shall deny the Motion as to whether Plaintiffs are entitled to divert water from Cerro Ditch. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact).

**Plaintiffs' Membership in Cerro Ditch and Applicability of Cerro Ditch Bylaws to Plaintiffs**

Plaintiffs also seek declarations that "the Trust is a member of Cerro Ditch" and that "Cerro Ditch rules or bylaws purporting to prevent the Trust from using Cerro Ditch to divert its water rights violate state law and are inapplicable to the Trust." (Mot. at 1, 17-21). Plaintiffs claim that Defendants amended the Ditch Association bylaws, thereby canceling Plaintiffs' membership. (Mot.

2

at 17-18). Plaintiffs also claim that the amended bylaw is invalid. (Mot. at 18). In their brief, Plaintiffs quote the amended bylaw and then state

> For purposes of this Motion only, Plaintiffs assume this is the language of a bylaw validly adopted by Cerro Ditch. That may not be the case, however, because discovery has revealed at least three different versions of bylaws allegedly adopted by Cerro Ditch on November 29, 1981, two of which do not contain the language indicating that a membership will be cancelled if water rights are transferred 'outside the limits of the Association,' including one set filed with Taos County in 1997. Further, Cerro Ditch corporation minutes do not reflect the language of, or any discussion about, Bylaw 5.01. Also, Cerro Ditch bylaws dated September 13, 1992 and filed with the State Engineer and bylaws received by the Corporation Commission on January 9, 1997 do not contain that transfer language.

(Mot. at 7, n. 2).

There is an obvious factual issue as to the very language of the amended bylaw and thus its effect and legality.

A court should declare the parties' rights and obligations when the judgment will (1) clarify or settle the legal relations in issue and (2) terminate or afford relief from the uncertainty giving rise to the proceeding. *Kunkel v. Continental Casualty Co.*, 866 F.2d 1269 1275 (10th Cir. 1989) (*quoting* E. Borchard, *Declaratory Judgments* 299, 2d ed. 1941). The principle that federal courts have no power to give advisory opinions applies to actions for declaratory judgments. *Oklahoma City v. Dulick*, 318 F.2d 830, 831 (10th Cir. 1963). Federal courts do not grant declaratory relief based on hypotheticals. *See Sierra Club v. Yeutter*, 911 F.2d 1405, 1420 (10th Cir. 1990); *Norvell v. Sangre de Cristo Development Co.*, 519 F.2d 370, 378, 378 (10th Cir. 1975) (court cannot render advisory opinions on unknown facts). Because there is a factual issue as to the bylaw language, the Court will deny that portion of Plaintiffs' Motion seeking a declaration that the Trust is a member of

Cerro Ditch and that Cerro Ditch rules or bylaws purporting to prevent the Trust from using Cerro Ditch to divert its water rights violate state law and are inapplicable to the Trust

**Cerro Ditch Authority on Rito Primero and Rito del Medio**

Plaintiffs also seek declaratory relief stating "Cerro Ditch has no easements or authority on the Rito Primero or the Rito del Medio because those streams are not part of the ditch, but rather are public water sources of supply for the ditch, and thus Cerro Ditch has no authority to enter Tres Ritos Ranch to monitor the Trust's use of its non-Cerro Ditch water rights on the streams, or to issue citations or file criminal complaints concerning those water rights." (Mot. at 1-2).

Defendants state "Plaintiffs did not raise this issue in their Complaint and the Court should not address it." (Resp. at 22). However, Plaintiffs' Complaint did provide Defendants with notice of Plaintiffs' claims of trespass and the improper issuance of citations and complaints related to Plaintiffs' use of their water rights on the Rito Primero and Rito del Medio. (*See* Compl. ¶¶ 31, 68, 74, 119, 129).

Defendants claim that the Rito Primero and Rito del Medio, which are sources of water for Cerro Ditch, are part of the Cerro Ditch system since it was constructed in 1851 because cleaning and maintenance of Rito Primero and Rito del Medio has been a traditional part of Cerro Ditch operations. (Resp. at 22-23). Defendants rely upon N.M. STAT. ANN. § 73-2-9 which states "[a]ll rivers and streams of water in this state, known prior to January 7, 1852, as public ditches or acequias, are established and declared to be public ditches or acequias." Because N.M. STAT. ANN. § 73-2-64 requires ditch commissioners to prosecute any person who interferes with a community ditch, Defendants conclude they have a duty to ensure that Plaintiffs' headgates for Plaintiffs' Rito

Primero and Rito del Medio water rights are closed when required per a consent decree and judgment entered by the Taos County District Court on December 27, 1946.  (Resp. at 23).

Defendants misconstrue the statute, N.M. STAT. ANN. § 73-2-9 , declaring some rivers and streams to be public ditches.  The statute refers to "ditches, acequias, or natural water courses *used as acequias*, as have become the *subject of private or community ownership*, and upon which labor is expended for the purpose of appropriating the water therefrom, and using the same to irrigate the lands of the persons so working thereon."  *Albuquerque Land & Irrigation Co. v. Gutierrez*, 61 P. 357, 365 (N.M. Terr. 1900) (*emphasis added*); *Black v. Aztec Ditch Co.*, 185 P. 549, 552 (N.M. 1919).  "[E]very one of said community ditches *beginning at the dam or entrance of the water*, in continued course to the end of the same, shall be considered as one ditch or acequia only, to be superintended by three commissioners and one mayordomo as now provided by law, except that where two community ditches or more take water from a common ditch or head, they shall be and remain separate and under separate management."  N.M. STAT. ANN. 73-2-11 (*emphasis added*).  The duty and authority of Defendants, as persons in charge of Cerro Ditch, to prosecute persons interfering with ditch operations is limited to Cerro Ditch.  Cerro Ditch begins at the points of diversion on Rito Primero, Rito del Medio and other streams as defined in the *Red River Adjudication*.  (*See* Reply, Ex. 2, Aff. of Thomas C. Turney, P.E., Ex. B thereto, Second Amended Default Order, No. Civ. 9780 SC, Doc. No. 2420, filed July 24, 1995).  Cleaning and maintaining Rito Primero and Rito del Medio by Cerro Ditch members does not, by itself, make those streams a part of Cerro Ditch, nor does it extend the duty or authority of Cerro Ditch officers  beyond the beginning of Cerro Ditch to those portions of those streams.

**Injunctive Relief**

Plaintiffs seek injunctive relief preventing Defendants from:

(a)     denying the Trust's membership in Cerro Ditch;

(b)     illegally interfering with the Trust's diversion of its water rights from the Cerro Ditch pursuant to its State Engineer permits;

(c)     entering Tres Ritos Ranch to monitor the Trust's use of its non-Cerro Ditch water rights on the Rito Primero and the Rito del Medio; and

(d)     issuing citations or filing criminal complaints concerning the Trust's use of its water rights on the Rito Primero or the Rito del Medio. (Mot. at 2). While Plaintiffs' Motion does not specify whether they seek a preliminary or permanent injunction, or both, the Court may grant a permanent injunction only after a valid adjudication of the merits. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success).

The traditional purpose for preliminary injunctions is to preserve the status quo until a trial on the merits may be had. *SCFC ILC, Inc. v. VISA USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991); *United States v. Oregon Med. Soc'y*, 343 U.S. 326, 333 (1952) (sole function of injunctive relief is to prevent future violations). This case is set for trial beginning May 2, 2005. The Court is not persuaded that Plaintiffs will suffer irreparable injury during the short period of time between entry of this Order and the trial. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (party moving for injunctive relief must show that there exists some cognizable danger of recurrent violation, something more than the mere possibility). Therefore, the Court will deny Plaintiffs'

Motion for injunctive relief at this time. Should the trial date be reset, Plaintiffs will be allowed to renew their Motion for preliminary injunctive relief. In such case, the Court may set an evidentiary hearing and / or order additional briefing to hear evidence relating to the four-part standard for preliminary injunctive relief. *See SCFC ILC, Inc. v. VISA USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).

**IT IS SO ORDERED.**

                                                             **BRUCE D. BLACK**
                                                             **UNITED STATES DISTRICT JUDGE**