IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT L. WALTRIP, JR., *et al.*,

    Plaintiffs,

vs.   No. CIV-03-1245 BB/WDS

ASSOCIATION OF MUTUAL PROTECTION AND
MUTUAL BENEFIT OF THE COMMUNITY OF
CERRO DE GUADALUPE, *et al.*,

    Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion For Summary Judgment and Supporting Authorities – Immunities (Doc. No. 125, filed January 10, 2005). The Court has reviewed the submissions of the parties and the relevant law. For the reasons set forth below, the Court shall **GRANT IN PART** and **DENY IN PART** Defendants' Motion.

**Legislative Immunity**

Defendants Segura and Aguilar seek legislative immunity for their voting to amend Cerro Ditch's bylaws in 1979 and 1981. (Mot. at 8). Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities. *Kamplain v. Curry County Bd. of Comm'rs*, 159 F.3d 1248, 1250 (10th Cir. 1998) (*quoting Bogan v. Scott-Harris*, 523 U.S. 44 (1998)). Legislative immunity extends to legislators only when they are acting "in the sphere of legitimate legislative activity." *Id.* (*quoting Tenney v. Brandhove*, 341 U.S. 367 (1951)).

In order to determine whether Defendants Segura and Aguilar should be granted legislative immunity, the Court looks to the function they were performing. *Kamplain*, 159 F.3d at 1251. The

essentials of the legislative function are the determination of legislative policy and its formulation and promulgation as a defined and binding rule of conduct. *Kamplain*, 159 F.3d at 1251.

Defendants Segura and Aguilar were members of the Cerro Ditch Association in 1979-1981. (Mot. at 8). Community ditch associations are political subdivisions of the state and have statutory authority to promulgate bylaws, rules and regulations for the government of the ditch. N.M. STAT. ANN. §§ 73-2-21, 73-2-28. During the 1979-1981 timeframe, Defendants Segura and Aguilar voted to amend the Ditch Association bylaws. (Mot. at 8).

Plaintiffs argue that Defendants Segura and Aguilar are not entitled to legislative immunity because their amendment approval focused solely on and only affected Plaintiffs, and therefore did not fall in the sphere of legitimate legislative activity. *See Crymes v. Kekalb County*, 923 F.2d 1482, 1485 (11th Cir. 1991) (if decision impacts specific individuals, rather than the general population, it is more apt to administrative in nature rather than legislative); *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1392 (11th Cir. 1993) (land use decision by local legislators which is an application of policy to a specific party is not protected by legislative immunity); *Keys Youth Serv., Inc. v. City of Olathe*, 38 F.Supp.2d 914, 920 (D. Kan. 1999) (when focus of zoning decision shifts from the entire city to one specific tract of land for which a zoning change is urged, the function becomes more quasi-judicial than legislative). The Court disagrees.

In voting for the amended bylaw that Plaintiffs complain of, Defendants established a general policy that applies to all members of the Ditch Association. (*See* Resp. at 30) (amended bylaw states ". . . If a member . . . transfers all of their water rights to property outside the limits of the Association . . . that person's membership shall be deemed cancelled"). The cases that Plaintiffs rely upon did not involve the establishment of a general policy; instead they related to decisions that applied a general

2

policy to a specific party. *See Crymes v. Kekalb County*, 923 F.2d 1482, 1485 (11th Cir. 1991) (county commissioners' vote to deny property owner a development permit was application of policy to a specific party); *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1392 (11th Cir. 1993) (city council members not absolutely immune from suit for their actions in connection with the rejection of plaintiff's site plan); *Keys Youth Serv., Inc. v. City of Olathe*, 38 F.Supp.2d 914, 920 (D. Kan. 1999) (city council's decision to deny an application for a special use permit was a quasi-judicial or administrative act rather than a legislative act). Plaintiffs' allegation that the amended bylaw does not affect any other members of the Ditch Association is not relevant. *See Kamplain v. Curry County Bd. of Comm'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998) (Tenth Circuit not persuaded by approach of other circuits that rest their analysis of legislative function on the number of persons affected by a legislative body's decision).

Plaintiffs also argue that Cerro Ditch adopted the membership cancellation policy for the sole purpose of applying it to Plaintiffs. (Resp. at 30). However, whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). The Court finds that the actions of Defendants Segura and Aguilar in voting to amend the Ditch Association bylaws in 1979-1981 fall within the sphere of legitimate legislative activity and concludes that Defendants Segura and Aguilar are entitled to legislative immunity for those actions.

**Prosecutorial Immunity**

Defendants Segura, in 1989 and 1994, and Vigil, in 2001 and 2002, filed criminal complaints against Plaintiffs' ranch manager allegedly pursuant to N.M. STAT. ANN. § 73-2-64. (Mot. at 13). That statute provides that

3

> any person not the owner or duly authorized representative of the owner of a water right in any community ditch of this state, or any such owner or representative, who shall, contrary to the order of the mayordomo or commissioner or other person in charge, cut, break, stop up or otherwise interfere with any community ditch or dam in this state, or any contra or lateral acequia thereof, or take or use water from the same contrary to such orders, shall be guilty of a misdemeanor . . . . And it is hereby made the duty of the mayordomo or other person in charge of any such ditch or acequia, to prosecute in the name of the state of New Mexico any violation of this act [this section] whenever he shall obtain knowledge thereof . . . .

N.M. STAT. ANN. § 73-2-64.

Defendants Segura and Vigil seek prosecutorial immunity for filing criminal complaints against Plaintiffs' ranch manager. (Mot. at 13). A prosecutor is immune from a § 1983 suit for damages based on his initiating a prosecution and in presenting the State's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Agency officials performing certain functions analogous to those of a prosecutor are also able to claim absolute immunity with respect to such acts. *Butz v. Economou*, 438 U.S. 478, 515 (1978); *Horwitz v. State Bd. of Medical Examiners*, 822 F.2d 1508, 1514-1515 (10th Cir. 1987). The filing of a criminal charges is clearly an initiation of a prosecution. *Lerwill v. Joslin*, 712 F.2d 435, 437-438 (10th Cir. 1983).

A prosecutor who performs functions within the continuum of initiating and presenting a criminal case, such as filing charges, ordinarily will be entitled to absolute immunity. *Snell v. Tunnell*, 920 F.2d 673, 693 (10th Cir. 1990). However, a prosecutor may lose absolute immunity by committing a prosecutorial act beyond the scope of his authority. *Lerwill v. Joslin*, 712 F.2d 435, 439-440 (10th Cir. 1983); *Bradley v. Fisher*, 80 U.S. 335, 351-352 (1871) (no immunity when judge exercises authority and the lack of jurisdiction is known to judge). While a prosecutor might lose absolute immunity when he acts with a complete and clear absence of authority, such a condition does not occur when a prosecutor has an arguable basis of authority grounded in a statute. *Snell*, 920 F.2d

at 694. The scope of a prosecutor's absolute immunity for prosecutorial acts beyond his authority necessarily depends on how far he exceeded his authority. *Lerwill*, 712 F.2d at n.7.

Defendants failed to meet their initial burden of demonstrating the absence of a genuine issue of material fact as to whether they had an arguable basis of authority to file the criminal charges against Plaintiffs' ranch manager. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Defendants simply state that they are entitled to immunity because N.M. STAT. ANN. § 73-2-64 requires that they prosecute Plaintiffs for violating the New Mexico Ditch and Acequia Act. (Mot. at 13; Reply at 3-5). Defendants do not set out the material facts as to which they contend no genuine issue exists; nor do they refer with particularity to those portions of the record upon which they rely. *See* D.N.M.LR-Civ. 56.1. Defendants merely attach ten exhibits and eight affidavits to their Motion. Further, Defendants did not attach copies of the criminal complaints to their Motion. Nor did they identify the violations with which they charged Plaintiffs' ranch manager. As such, the Court cannot determine whether Defendants Segura and Vigil had an arguable basis of authority to file the criminal charges or whether they were acting clearly outside the authority or jurisdiction of their office. *See Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) (court is not obligated to comb the record in order to make movant's arguments for them). Accordingly, the Court cannot conclude that Defendants Segura and Vigil are entitled to prosecutorial immunity.

**Qualified Immunity**

Defendants contend they are entitled to qualified immunity for the following acts about which Plaintiffs complain: "informing Plaintiff Waltrip he could not use the ditch canal, alleged trespass, complaining to the Office of the State Engineer, allegedly destroying or damaging ponds,

issuing fines, contacting the County/District Attorney's Office and conspiring to commit those acts." (Mot. at 14-15).

Qualified immunity protects public officials performing discretionary functions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an immunity from suit rather than a mere defense to liability. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Qualified immunity leaves ample room for mistaken judgment, protecting all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To prevail on summary judgment against a defendant who asserts a defense of qualified immunity, a plaintiff must show that (1) the official violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established when the alleged violation occurred. *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 841 (10th Cir. 2005).

Plaintiffs' allegations, if true, establish a constitutional violation of their property rights and those rights were clearly established such that a reasonable person in Defendants' position would have known that his conduct violated that right. *See Saucier v. Katz*, 533 U.S. 194, 201-202 (2001); *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). Plaintiffs allege that they own property interests in the form of a ditch easement and water rights. (*See* Resp. at 4, 10; Pls.' Facts 1-3, 13-14). New Mexico law clearly establishes that ditch easements and water rights are property rights. *See Olson v. H & B Properties, Inc.*, 882 P.2d 536, 539 (N.M. 1994); *New Mexico Prods. Co. v. New Mexico Power* Co., 77 P.2d 634, 641 (N.M. 1937); *Murphy v. Kerr*, 296 F. 536, 544 (D.N.M. 1923). Plaintiffs also allege that Defendants deprived Plaintiffs of the use of their property interests by revoking Plaintiffs' membership in the Cerro Ditch and prohibiting Plaintiffs from using Cerro Ditch.

(*See* Resp. at 4-6, 10-11, 15-16, 19, 21, 23, 25-26; Pls.' Facts 4-5, 15-16, 26-27, 34, 39, 43, 49-51, 53).  Reasonable officials of community ditch associations would know that enforcing a bylaw that serves no legitimate government interest for the sole purpose of preventing Plaintiffs, but not other ditch members, from using its ditch and water rights should be a violation of Plaintiffs' constitutional rights.  *See Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996)(A reasonably competent public official should know the law governing his conduct);  U.S. Const. amend. XIV, § 1 (no state shall deprive any person of life, liberty, or property without due process of law; nor deny to any person the equal protection of the law).

Plaintiffs' second cause of action states that Defendants conspired to deprive Plaintiffs of their constitutionally protected property rights.  (Compl. ¶¶ 97-102).  A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.  *Hampton v. Hanrahan*, 600 F.2d 600, 620-621 (7th Cir. 1979) (*reversed in part on other grounds* 446 U.S. 754, 759 (1980)) (*quoting Rotermund v. United States Steel Corp.*, 474 F.2d 1139 (8th Cir. 1973).

Plaintiffs allege the following facts to establish that Defendants conspired to deprive Plaintiffs of their constitutionally protected property rights.  Cerro Ditch officials amended a Ditch bylaw specifically aimed at stopping Plaintiffs' use of water if Plaintiffs transferred their water rights to their ranch.  (*See* Resp. at 46; Pls.' Facts 5 and 26).  At a general membership meeting, the Ditch Association approved a motion to oppose "the cutting off or diverting any water off the main Cerro ditch on [Plaintiffs' ranch] or any other private lands where the main ditch crosses."  (*See* Resp. at 46; Pls.' Fact 22).  Defendants "harassed" Plaintiff Waltrip and Plaintiffs' ranch manager to intimidate

them to keep Plaintiffs from using their water rights.  (*See* Resp. at 46; Pls.' Fact 45; Waltrip Aff. ¶¶ 3, 8, 9, 11-15, 25, 29-33, 36, 37).  The alleged acts of harassment include threatening Plaintiff Waltrip and his family, trespassing, filing criminal complaints against Plaintiffs' employee, and destroying ponds on Plaintiffs ranch. (*Id.*).

Defendants contend that Plaintiffs presented no evidence of an agreement among Defendants or concerted action by Defendants to achieve a common goal.  (Mot. at 24; Reply at 13).  However, direct evidence of a conspiracy is rarely available and thus the existence of a conspiracy must usually be inferred from circumstantial evidence.  *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990); *Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir. 1971) (circumstantial evidence may provide adequate proof of conspiracy); *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979) (absent the testimony of a coconspirator, it is unlikely that direct evidence of a conspiratorial agreement will exist).  Plaintiffs have alleged that Defendants participated in meetings at which Defendants discussed Plaintiffs' use of their water rights at their ranch.  From these facts, including those regarding Defendants' conduct toward Plaintiffs, a jury could reasonably infer that a conspiracy existed.  *See Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979) (jury could reasonably infer existence of conspiracy where defendants participated in private meetings at which plaintiff was discussed).  In addition, Defendants have not set forth any facts demonstrating the absence of a conspiracy.  *See Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970) (unless alleged conspirators foreclosed the possibility of a tacit agreement from which a conspiracy could be inferred, they were not entitled to summary judgment);  *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (once plaintiff establishes the violation of a clearly established right, the burden shifts to the defendant

to prove that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law).

"[T]he question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can 'infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached an understanding' to achieve the conspiracy's objectives." *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979) (*quoting Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "The existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide." *Adickes v. Kress & Co.*, 398 U.S. 144, 176 (1970) (Black, J., concurring); *Continental Ore Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690, 700-701 (1962) (it is the jury which weighs contradictory evidence and inferences and draws the ultimate conclusion as to the facts). Therefore, the Court shall deny Defendants' Motion for qualified immunity.

**State Law Immunity**

Defendants claim they are immune from liability for Plaintiffs' state law claims pursuant to the New Mexico Tort Claims Act, N.M. STAT. ANN. §§ 41-4-1 through 41-4-29. (Mot. at 25). The New Mexico Tort Claims Act grants immunity from liability for any tort, except as waived by section 41-4-5 through 41-4-12, to governmental entities and public employees acting within the scope of duty. N.M. STAT. ANN. § 41-4-4. Community ditches are excluded from the waivers of immunity of liability under sections 41-4-6 through 41-4-12. N.M. STAT. ANN. § 41-4-13. Therefore, the New Mexico Tort Claims Act waives immunity for community ditches only with respect to section 41-4-5, liability for negligent operation of motor vehicle, aircraft or water craft. Plaintiffs state section 41-4-5 does not apply in this case. (*See* Resp. at 66).

The individual Defendants claim that they, as public employees, are also immune from liability under the New Mexico Tort Claims Act, except to the extent a claim is stated under section 41-4-5 which is not applicable in this case. (Reply at 14). The exclusions from waiver of immunity provision of the Tort Claims Act states in full

> All community ditches or acequias and all associations created pursuant to the Sanitary Projects Act [3-29-1 to 3-29-19 NMSA 1978] are hereby excluded from the waiver of immunity of liability under Sections 441-4-6 through 41-4-12 NMSA 1978.

N.M. STAT. ANN. § 41-4-13.

The provision excludes community ditches from the waivers of immunity. It does not exclude public employees. *See Martinez v. City of Clovis*, 95 N.M. 654, 656 (Ct. App. 1980) (the language of the written notice section of the New Mexico Tort Claims Act does not include, and therefore does not apply to, claims against public employees).

Defendants claim that Plaintiffs' claims are barred because Plaintiffs did not give Defendants notice within 90 days after an occurrence giving rise to a claim as required by section 41-4-16 of the New Mexico Tort Claims Act. (Mot. at 25). However, the language of the written notice section of the New Mexico Tort Claims Act does not include, and therefore does not apply to, claims against public employees. *Martinez v. City of Clovis*, 95 N.M. 654, 656 (Ct. App. 1980).

Defendants also contend that Plaintiffs state law claims are barred because Plaintiffs did not file their claims within the time period required by the New Mexico Tort Claims Act. (Mot. at 14). The New Mexico Tort Claims Act states

> Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two year after the date of occurrence resulting in loss, injury or death . . . .

N.M. STAT. ANN. § 41-4-15(A).

The limitation period commences when an injury manifests itself and is ascertainable, rather than when the wrongful or negligent act occurs. *Long v. Weaver*, 105 N.M. 188, 191 (Ct. App. 1986). Instead of addressing with specificity when Plaintiffs' alleged injuries manifested themselves and were ascertainable, Defendants merely state that "Plaintiffs did not file suit 'within two years after the date of occurrence resulting in loss, injury or death,' as required by § 41-4-5 of the Act." (Mot. at 25; Reply at 14). Accordingly, the Court cannot rule as to which claims, if any, are barred by the New Mexico Tort Claims Act statute of limitations.

**IT IS SO ORDERED.**

                                                                                          _____
                                                                                          **BRUCE D. BLACK**
                                                                                          **UNITED STATES DISTRICT JUDGE**